IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BRENNAN SALES INSTITUTE;<br>CHARLES D. BRENNAN, JR.<br>2510 Township Line Road<br>Upper Darby, PA 19083,<br><br>       Plaintiffs,<br><br>v.<br><br>PAUL CHERRY<br>3622 Silverside Road<br>Wilmington, DE 19810,<br><br>and<br><br>AMERICAN MANAGEMENT<br>ASSOCIATION INTERNATIONAL<br>1601 Broadway<br>New York, NY 10019,<br><br>       Defendants. | CASE NO.:<br><br>**COMPLAINT –**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Brennan Sales Institute and Charles D. Brennan, Jr. (collectively "Plaintiffs"), by and through their counsel, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, as and for their complaint against defendants Paul Cherry and American Management Association International (collectively "Defendants") avers as follows:

## THE PARTIES

1.  Plaintiff Brennan Sales Institute (hereinafter referred to as "BSI") is a business incorporated in the Commonwealth of Pennsylvania with its principal place of business located at 2510 Township Line Road, Upper Darby, PA 19083.

2.  Among other things, BSI designs, publishes, and maintains sales and management training programs for use in interstate commerce.

3.    Plaintiff Charles D. Brennan, Jr. ("Brennan") is an adult individual residing in Pennsylvania.

4.    Mr. Brennan is the author of various books, workbooks, training materials and other copyrighted information that are used in interstate commerce.

5.    On information and belief, Defendant Paul Cherry ("Cherry") is an individual resident of Delaware.

6.    On information and belief, Mr. Cherry is engaged in the business of designing, publishing, and maintaining sales and management training programs and in so doing copying plaintiff's copyrighted works without consent.

7.    Defendant American Management Association International ("AMACOM") is a business incorporated in the State of New York with its principal place of business located at 1601 Broadway, New York, NY 10019.

8.    On information and belief, Defendant AMACOM is the book publishing division of a global, not-for-profit, membership-based association, American Management Association International, which provides a full range of management development and educational services to individuals, companies and government agencies worldwide.

9.    On information and belief, thousands of business professionals have acquired the latest business know-how, valuable insights and increased confidence at AMACOM seminars, conferences, current issues forums and briefings, as well as through AMACOM books and publications, research and print and online self-study courses that are used in or distributed through interstate commerce.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction pursuant to both 28 U.S.C.A. §§ 1331 and 1338(a) because this action involves a federal question related to copyrights and 28 U.S.C.A. §1332

2

(a)(1) and (c)(2) because complete diversity exists and this action seeks monetary relief in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

11.     This Court has personal jurisdiction over all the Defendants by virtue of their transacting, doing, and soliciting business in this District.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims outlined herein occurred in the Eastern District of Pennsylvania.

## BACKGROUND AND GENERAL ALLEGATIONS

### Copyrighted Material

13.     BSI, formerly known as Sales Development Institute, was purchased by Mr. Brennan in 1984.

14.     For more than 22 years, BSI has worked successfully worldwide with companies of all sizes to develop the talents of nearly 2.0 million professionals.

15.     Today, BSI is a leading provider of advanced sales and management training programs.

16.     In addition, BSI is a well-respected source of copyrighted training materials and other information.   BSI spends substantial amounts of time, money, and effort creating, collecting, and distributing its copyrighted materials.

17.     Likewise, Mr. Brennan is the author of AMACON business book *Sales Questions that Close the Sale* (the "Brennan Book") and award-winning book *Proactive Customer Service*.

18.     In 1994, AMACOM published the Brennan Book pursuant to an Agreement dated May 8, 1992 (the "AMACOM Agreement").   A true and correct copy of the AMACOM Agreement is attached hereto and incorporated herein as Exhibit 1.

3

19.    Pursuant to the plain language of the AMACOM Agreement, Mr. Brennan retained all copyrights and rights to receive royalties from future publication of updated editions of the Brennan Book and/or works derived from the materials presented in the Brennan Book.

20.    Moreover, the Brennan Book incorporates various materials and text that was used by Mr. Brennan and BSI in seminars throughout the early 1990's.  These materials and text were registered with the United States Copyright Office in 1992 – subsequent copyright.  A true and correct copy of the Certificate of Copyright Registration is attached hereto and incorporated herein as Exhibit 2.

21.    Promotion of BSI's copyrighted training material along with the Brennan Book is one way in which BSI attracts corporations in selecting its seminars and training programs.  BSI has been extraordinarily successful in this regard.

22.    Likewise, seminar attendees and corporations purchase BSI's' copyrighted materials and/or the Brennan Book, thereby increasing Plaintiffs' respective revenues.

### Cherry's Relationship with the Parties

23.    Defendant Cherry was an instructor for BSI from December 1995 to 1998.

24.    On January 1, 1997, Cherry and BSI entered into an Agreement that set forth the terms of Cherry's role as an instructor/consultant for BSI  (the "Cherry Agreement").  A true and correct copy of the Cherry Agreement is attached hereto and incorporated herein as Exhibit 3.

25.    During the course of employment with BSI, Cherry was exposed to BSI's copyrighted materials, trade secrets, customer lists, and other intellectual property that was proprietary and confidential.

26.    Pursuant to the terms of the Cherry Agreement, Cherry agreed that he would not, *inter alia*, use the materials or techniques developed by BSI for his own use or for the use of a

4

third person, reveal, copy, and/or distribute the materials and techniques developed by BSI, or accept or solicit sales training business from BSI's clients or customers.

27.     Upon information and belief, Cherry has used BSI's copyrighted materials and other proprietary and confidential information to conduct training seminars from 1999 to the present.

28.     For example, in conversations with Stryker Medical Equipment, a BSI prospective client, Mr. Brennan came to learn that Cherry was also soliciting Stryker to provide sales training services and was using training materials that sounded to Mr. Brennan to be very similar to materials used by BSI.

29.     Upon further investigation, Mr. Brennan came to learn that in June of 2006 AMACOM published a book written by Cherry titled *Questions that Sell* (the "Cherry Book").

30.     The Cherry Book and training materials infringe upon Plaintiffs' copyrighted work.   The Cherry Book and training materials contain passages that are identical or virtually identical to passages from the Brennan Book and BSI sales training workbooks.

31.     These passages include, but are not limited to, the following:

- Questions about the past, Cherry Book at p. 23;

- Decisions making Criteria, Cherry Book at p. 31;

- Competition and Trends, Cherry Book at p. 33;

- Qualifying, Cherry Book at p. 37;

- Legitimizing, Cherry Book at pp. 40-50;

- Dialogue Probe, Cherry Book at pp. 58, 60-66;

- Educational Questions, Cherry Book at pp. 71-78;

- Lock on Questions, Cherry Book at pp. 81-87;

5

- Getting Past the Objections, Cherry Book at pp. 114-119; and

- MLPQ, Cherry Book at Appendix B.

True and correct copies of the relevant pages of the Cherry Book are attached hereto and incorporated herein as Exhibit 4.

32.     For example, pages 118 to 121 of the Brennan Book set forth "The Four-Step Process for Handling Objections."  The steps include Align, Question, Resolve and Check / Proceed.   True and correct copies of the relevant pages of the Brennan Book are attached hereto and incorporated herein as Exhibit 5.  Likewise, pages 114 to 117 of the Cherry Book set forth "The Four-Step Process for Handling Objections."  The steps include Find a Point of Agreement, Offer a Question, Educate the Customer, and Secure a Commitment.  Despite the subtle changes in word choice, there can be no question that the Cherry Book recasts the approach set forth in the Brennan Book.

<h2 align="center">Defendants' Wrongful Conduct</h2>

33.     For their own profit and advantage, Defendants are misappropriating the copyrighted material in which Plaintiffs has invested heavily. Defendants' rely on the copyrighted content of Plaintiffs to attract readers, buyers and corporate clients.   The misappropriated content is a core component of Defendants' infringing works.

34.     What Defendants gain by appropriating Plaintiffs' copyrighted material diminishes the value of Plaintiffs' respective businesses as an author and a seminar provider. For example, Defendants are usurping the funds that Plaintiffs would be entitled to receive from book royalties and from seminar fees. These are Plaintiffs stock in trade.

35.    By copying Plaintiffs' copyrighted works verbatim, Defendants are also diminishing Plaintiffs' market share. This usurps Plaintiffs' exposure in the relevant market, which, in turn, has damaged and will damage Plaintiffs' ability to attract additional business.

36.    Defendants' therefore generate revenue using Plaintiffs' works, without compensation to Plaintiffs.

37.    Plaintiffs do not in any way seek to abrogate or otherwise limit Defendants' First Amendment rights. Plaintiffs have no objection to Defendants discussing the content and ideas expressed in Plaintiffs' works.    However, Defendants do not need to infringe Plaintiffs' copyrights to exercise their First Amendment rights.

38.    Defendants have made, and continue to make, their infringing works available to users within this District; have misappropriated and infringed Plaintiffs' copyrighted content by actions taking place in this District; have promoted and continue to promote their works to people within this District; and as a result, have gained revenue and other benefit to the detriment of Plaintiffs.

39.    Defendants' conduct has been knowing and willful. The specific acts of infringement described above are simply representative of a broader pattern of infringement in which Defendants make unauthorized use of the content of Plaintiff's copyrighted works every day.

40.    AMACOM's publication of the Cherry Book was a willful, intentional and/or reckless violation of both Mr. Brennan's copyrights and the AMACOM Agreement.

41.    The AMACOM's Agreement does not allow AMACOM to re-publish Mr. Brennan's text under Cherry's name.

7

42.    In fact, during negotiations with AMACOM, Mr. Brennan insisted that AMACOM's form agreement be modified so that the copyrights remained in Mr. Brennan's name.

43.    The clear intent of the AMACOM Agreement was to ensure that Mr. Brennan retained all rights to publication.

44.    As a result of Cherry's and AMACOM's violation of Mr. Brennan's copyright, Mr. Brennan continues to lose both book sales and sales of his training seminar.

45.    As a result of Cherry's and AMACOM's use of BSI's copyrighted training materials, BSI continues to lose sales of its training seminars.

## COUNT I
## Copyright Infringement

46.    Plaintiffs incorporate herein by reference paragraphs 1 through 45, above.

47.    Plaintiffs have registered with the United States Copyright Office and therefore owns copyrighted material in at least the following works:

48.    Plaintiffs have complied in all respects with 17 U.S.C. §§ 101 et seq., and secured the exclusive rights and privileges in and to the copyrights of the above-referenced works. Plaintiff Brennan has been and still is the sole proprietor of all rights, title, and interest in and to the copyrights in the respective works as referenced above.

49.    Defendants' conduct violates the exclusive rights belonging to Plaintiffs as owner of the copyrights, including without limitation one or more of Plaintiffs' rights enumerated under 17 U.S.C. § 106.

50.    On information and belief, Plaintiffs allege that, as a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other

8

benefits rightfully belonging to Plaintiffs. Accordingly, Plaintiffs seek an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

51.    Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiffs in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving the Plaintiffs with no adequate remedy at law.

52.    On information and belief, Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiffs. Plaintiffs are, therefore, entitled to the maximum statutory damages allowable.

53.    As a consequence of this dispute between the parties as to the rights, title, and interest in the copyrighted works described above, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs also seek a resolution of this ongoing controversy by a declaration of this Court as to the rights of the respective parties in this matter.

WHEREFORE, Plaintiffs Brennan and BSI respectfully demand judgment in their favor and against defendants anticipated economic benefit, jointly and severally, on Count I of the Complaint and respectfully request that the Court immediately issue an Order:

(a) Declaring that Defendants' unauthorized conduct violates Plaintiffs' rights under common law and the Federal Copyright Act;

(b) Immediately and permanently enjoining Defendants, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from copying and republishing any of

9

Plaintiffs' copyrighted works without consent or otherwise infringing Plaintiffs' copyrights or other rights in any manner;

(c) Ordering Defendants to account to Plaintiffs for all gains, profits, and advantages derived by Defendants by their infringement of Plaintiffs' copyrights or such damages as are proper, and since Defendants intentionally infringed Plaintiffs' copyrights, for the maximum allowable statutory damages for each violation;

(d) Awarding Plaintiffs actual and/or statutory damages for Defendants' copyright infringement in an amount to be determined at trial;

(e) Awarding Plaintiffs their costs, reasonable attorneys' fees, and disbursements in this action, pursuant to 17 U.S.C. § 505; and

(f) Awarding Plaintiffs such other and further relief as is just and proper.

## COUNT II
### Breach of Contract against Cherry

54. Plaintiffs incorporate herein by reference paragraphs 1 through 53, above.

55. Under the Cherry Agreement, Cherry warranted and represented, *inter alia*, that he would not:

> (a). Use the material, and techniques developed by [BSI] for his own use or for the use of a third person, business and/or corporation who is not a customer of [BSI];
>
> (b). Reveal, copy and/or distribute any of the professional sales techniques and/or materials of [BSI] to outside services;
>
> (c) Accept or solicit professional sales training business from any of [BSI]'s customers during the term of the Agreement and for a period of two (2) years following the Agreement.

See Exhibit 3, at Section 5.

10

56.    Cherry further agreed that "[a]ll documents and materials, including reports, data, plans, prints, books, information, and records, developed for [BSI] during the life of this agreement shall belong to [BSI] and shall be surrendered to [BSI] upon the expiration or termination of this Agreement."   See Exhibit 3, at Section 13.

57.    Cherry materially breached the Cherry Agreement by, *inter alia*, using BSI confidential information or techniques for his own benefit; revealing, copying and/or distributing the professional sales techniques and/or materials of [BSI] to outside services; accepting and/or soliciting professional sales training business from any of [BSI]'s customers within two (2) years of the termination of the Cherry Agreement; and failing to surrender all documents and materials, which constitute property of BSI, to BSI upon termination of the Cherry Agreement.

58.    All conditions precedent, if any, necessary to bring BSI's action against Cherry have been satisfied.

59.    As a direct, foreseeable, natural, ordinary and proximate result of Cherry's breaches and other conduct, BSI has suffered damages.

WHEREFORE, Plaintiff BSI respectfully demands judgment in its favor and against defendant Cherry on Count II of the Complaint, for compensatory and consequential damages, in an amount in excess of $75,000, for specific performance of the Cherry Agreement, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

## COUNT III
### Breach of Contract against AMACOM

60.    Plaintiffs incorporate herein by reference paragraphs 1 through 59, above.

11

61.     Under the AMACOM Agreement, AMACOM warranted and represented, *inter alia*, that it would "take all reasonable steps to obtain copyright in the name of Charles Brennan." See Exhibit 2, at Section 9.

62.     AMACOM further agreed that "[Brennan] shall receive as part of his semiannual royalty payment, fifty percent (50%) of the net receipts by [AMACOM] deriving from any exercise of ... subsidiary rights." See Exhibit 2, at Section 11.

63.     AMACOM has materially breached the AMACOM Agreement by, *inter alia*, publishing a literary work, the Cherry Book, containing text that violates copyrights owned by Mr. Brennan and/or failing to make royalty payments to Mr. Brennan based upon the net receipts from the Cherry Book.

64.     All conditions precedent, if any, necessary to bring Brennan's action against AMACOM have been satisfied.

65.     As a direct, foreseeable, natural, ordinary and proximate result of AMACOM's breaches and other conduct, Mr. Brennan has suffered damages.

WHEREFORE, Plaintiff Charles D. Brennan Jr. respectfully demands judgment in his favor and against defendant AMACOM on Count III of the Complaint, for compensatory and consequential damages, in an amount in excess of $75,000, for specific performance of the AMACOM Agreement, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

## COUNT IV
## Common Law Unfair Competition

66.     Plaintiffs incorporate herein by reference paragraphs 1 through 65, above.

67.     Defendants' acts and conduct as detailed in this Complaint constitute unfair competition under Pennsylvania law.

12

68.     Defendants have misappropriated property rights belonging to BSI for the purpose of gaining a commercial advantage.

69.     Cherry has filched BSI's tangible, confidential information, protected trade secrets, and copyrighted materials and has unfairly used such information to his advantage and to the detriment of BSI.

70.     Defendants' acts and conduct as alleged have damaged and will continue to damage BSI's profits, good will and reputation and has resulted in an illicit gain of profits to defendant Cherry in an amount that is unknown at the present time.

WHEREFORE, Plaintiff BSI respectfully demands judgment in its favor and against Defendants, jointly and severally, on Count IV of the Complaint, for compensatory, consequential and punitive damages, in an amount in excess of $75,000, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

## COUNT V
## Tortious Interference with Contract

71.     Plaintiffs incorporate herein by reference paragraphs 1 through 70 above.

72.     As detailed above, Cherry was aware of contractual relationships between BSI and its clients.

73.     Cherry interfered with one or all of those contractual relationships by, inter alia, using BSI confidential information or techniques for his own benefit; revealing, copying and/or distributing the professional sales techniques and/or materials of [BSI] to outside services; and /or accepting and/or soliciting professional sales training business from any of [BSI]'s customers within two (2) years of the termination of the Cherry Agreement for the purpose of unfairly competing with BSI.

13

74.     Cherry interfered with one or all of those contractual relationships for the purposes of damaging BSI's profits, good will and reputation and obtaining an illicit gain of profits.

75.     The actions and conduct attributable to Cherry were unjustifiable and without privilege.

76.     As a direct, foreseeable, natural, ordinary and proximate result of Cherry's interference, BSI has suffered damages.

WHEREFORE, Plaintiff BSI respectfully demands judgment in its favor and against defendant Cherry on Count V of the Complaint, for compensatory, consequential and punitive damages, in an amount in excess of $75,000, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

### COUNT VI
### Tortious Interference with Prospective Contract

77.     Plaintiffs incorporate herein by reference paragraphs 1 through 76, above.

78.     As detailed above, BSI was party to valid and enforceable contractual relationships with numerous clients and had cultivated and developed business relationships with numerous prospective clients.

79.     BSI had a reasonable expectation of obtaining an economic advantage as a result of the business relationships that it cultivated and developed.

80.     Cherry, through his association with BSI, was aware of BSI's expectation of obtaining an economic advantage.

81.     Cherry used the information gained from his relationship with BSI to interfere with BSI's expected economic advantage by communicating with or otherwise soliciting BSI's potential clients to establish business relationships with Cherry, instead of BSI.

14

82.    Absent Cherry's interference and other wrongful conduct, there is a reasonable probability that BSI would have realized the anticipated economic benefit or, in the alternative more fully realized the anticipated economic benefit.

83.    As a direct, foreseeable, natural, ordinary and proximate result of Cherry's interference, BSI has suffered damages.

84.    Cherry's extreme and outrageous conduct requires the imposition of punitive damages.

WHEREFORE, Plaintiff BSI respectfully demands judgment in its favor and against defendant Cherry on Count VI of the Complaint, for compensatory, consequential and punitive damages, in an amount in excess of $75,000, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

## COUNT VII
### Conspiracy

85.    Plaintiffs incorporate herein by reference paragraphs 1 through 84, above.

86.    Defendants Cherry and AMACOM combined and agreed with one another to wrongfully secure an unfair advantage and economic benefit for themselves at the expense of BSI, as more fully set forth above.

87.    Defendants Cherry and AMACOM acted in concert with respect to the aforementioned matters concerning the publication of the Cherry Book, to cause harm to Brennan and BSI.

88.    Defendants agreed upon course of conduct was wrongful and illegal.

89.    As a direct, foreseeable, natural, ordinary and proximate result of Defendants Cherry's and AMACOM's conspiracy, breaches and other wrongful conduct, Brennan and BSI have suffered damages.

15

WHEREFORE, Plaintiffs Brennan and BSI respectfully demand judgment in their favor and against defendants Cherry and AMACOM, jointly and severally, on Count VII of the Complaint, for compensatory and consequential damages in an amount in excess of $75,000, plus interest as may be allowable by law, and all other relief that the Court deems just and proper under the circumstances.

## COUNT VIII
### Injunctive Relief

90.     Plaintiffs incorporate herein by reference paragraphs 1 through 89, above.

91.     BSI has been harmed and is threatened with imminent harm by Defendant Cherry's and AMACOM's actions.

92.     If Defendants are permitted to continue their wrongful activities, including but not limited to continuing the marketing and sale of training services in violation of the Cherry Agreement; the improper use of BSI property to further Cherry's business and his own economic gain at BSI's expense, and the improper sale of the Cherry Book, which infringes upon Plaintiff's copyrights, Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.

93.     Greater injury will result to Plaintiffs by refusing the injunction than will result to Defendants if the requested relief is granted.

94.     Granting the relief requested will not harm any public interest.

95.     Defendants' conduct is manifestly wrongful, willful, wanton, reckless, outrageous and in complete disregard of Plaintiffs' rights.

96.     The requested equitable relief is reasonably suited to abate Defendants' wrongful conduct.

16

PHIL1 702843-2

WHEREFORE, Plaintiffs Brennan and BSI respectfully demand judgment in its favor and against defendants anticipated economic benefit, jointly and severally, on Count VIII of the Complaint, for preliminary and permanent injunctive relief, and respectfully requests that the Court immediately issue an Order:

(i) enjoining, restraining and preventing Cherry's further violation of the Cherry Agreement;

(ii) enjoining, restraining and preventing AMACOM's further violation of the AMACOM Agreement;

(iii) directing Defendant Cherry to immediately turn over to BSI any BSI property in his possession;

(iv) enjoining, restraining and preventing Cherry from using confidential information obtained BSI in violation of the Cherry Agreement; and

(iv) such other and further relief as the Court deems just and proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

Dated: November 14, 2006                    BY:_____

Charles A. Ercole
Joseph P. Bradica
260 South Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060

*Attorneys for Plaintiff,*
*Brennan Sales Institute*